IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Elsie Marie Allen, as Personal Representative of the Estate of Donna Lea Swaim, | ) ) ) | C.A. No. 6:04-2327-HMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Greenville Hotel Partners, Inc., and R.G. Hospitality, LLC, and Ronald Gedda, and Choice Hotels International, Inc., and R.G. Properties, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ----------------------------------------------------- | ) | |
| Kieth Barfield, as Personal Representative of the Estate of Allison Barfield | ) ) | C.A. No. 6:04-1260-HMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Choice Hotels International, Inc., RG Hospitality, LLC, Greenville Hotel Partners Inc., Ronald Gedda, and RG Properties, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ----------------------------------------------------- | ) | |

William E. Harrell, Jr.,                    )
                                            )        C.A. No. 6:04-2328-HMH
            Plaintiff,                      )
                                            )
    vs.                                     )
                                            )
Greenville Hotel Partners, Inc., and R.G.   )
Hospitality, LLC, and Ronald Gedda, and     )
Choice Hotels International, Inc., and R.G.  )
Properties, LLC,                            )
                                            )
            Defendants.                     )

## OPINION & ORDER

This matter is before the court on Choice Hotels International, Inc.'s ("Choice")

motion for summary judgment. For the reasons stated below, the court grants Choice's

motion for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

These cases concern a fire which occurred in the early morning hours of January 25,

2004, at the Comfort Inn and Suites located at 831 Congaree Road in Greenville, South

Carolina ("the Comfort Inn"). (Pls.' Mem. Opp'n Summ. J. 2.) Allison Barfield

("Barfield") and Donna Lee Swaim ("Swaim"), as well as four other guests at the Comfort

Inn, were killed in the fire. William E. Harrell, Jr. ("Harrell") and eleven others were

seriously injured. (Id.) The cause of the fire was arson, and Eric Preston Hans has been

indicted for the crime. United States v. Hans, Cr. No. 05-1227 (D.S.C. Nov. 16, 2005).

On April 20, 2004, Keith Barfield, as personal representative of Barfield's estate, filed

a complaint against Choice Hotels International, Inc. ("Choice"), R.G. Hospitality, LLC

("RGH"), and Greenville Hotel Partners, Inc. ("GHP"). On May 3, 2005, Keith Barfield

2

filed an amended complaint and added Gedda as a defendant, and on September 21, 2005, filed a second amended complaint and added R.G. Properties, Inc. ("RGP") as a defendant.[1]

Choice is the franchisor, and RGH and Gedda are the franchisees. Gedda is the sole shareholder of RGH, and the Plaintiffs allege that he is also a Choice franchisee, operating the Comfort Inn. GHP owns the land on which the hotel building is situated. (Pls.' Mem. Opp'n Summ. J. 2.) The employees of RGP allegedly committed negligent acts at the Comfort Inn which contributed to the injuries and damages suffered by Barfield, Swaim and Harrell. (Barfield Second Am. Compl. ¶ 15; Allen Second Am. Compl. ¶ 13; Harrell Second Am. Compl. ¶ 13.)

In his second amended complaint, Keith Barfield alleges that the Defendants were negligent in failing to provide adequate security and fire protection for the hotel and that the defendants are jointly and severally liable. (Barfield Second Am. Compl. ¶¶ 17-23.) Moreover, Keith Barfield asserts a survival action on behalf of Barfield, a wrongful death claim for Barfield's death, and seeks punitive and/or exemplary damages and costs for bringing this action. (Id. ¶¶ 24-32.)

On July 14, 2004, Elsie Marie Allen ("Allen"), Swaim's personal representative, and Harrell filed separate actions in this court alleging damages arising from the fire. Like Barfield, Allen and Harrell amended their complaints twice, and both now proceed against all of the Defendants.

---

[1]Choice, RGH, Gedda, and RGP are hereinafter referred to collectively as the "Defendants." GHP's motion for summary judgment was granted without opposition on December 9, 2005.

Allen and Harrell assert the same claims against the Defendants, for negligence in constructing and maintaining the Comfort Inn premises, failing to protect against the criminal acts of third parties, failing to render aid, and breach of warranty. (Allen Second Am. Compl. ¶¶ 24-58; Harrell Second Am. Compl. ¶¶ 25-75.) Allen and Harrell seek actual and punitive damages.

On August 2, 2005, Choice filed a motion for summary judgment for the claims in the actions involving Allen, Barfield, and Harrell. Choice filed the same motion and memorandum in all three actions. Similarly, Allen, Barfield, and Harrell filed a joint response in opposition to Choice's motion on September 8, 2005. Choice replied on September 15, 2005.

On October 6, two additional motions for summary judgment were filed in the three above pending actions. Gedda filed the first motion and GHP, RGH, and Gedda filed the second motion ("GHP/RGH/Gedda motion"). The court denied Gedda's motion on December 20, 2005 ("December Order"), finding that an issue of material fact exists as to whether Gedda was a Choice franchisee. Also in the December Order, the court granted in part and denied in part the GHP/RGH/Gedda motion, finding that no issue of material fact existed with respect to the breach of implied warranty of habitability or fitness for a particular use claims, but finding that issues of fact exist concerning the Plaintiffs' claims that RGH and Gedda negligently provided security and negligently trained the Comfort Inn staff in how to respond to a fire alarm.

4

On January 4, 2006, the court heard oral argument on Choice's motion for summary judgment. The Plaintiffs filed an additional supplemental memorandum in opposition to Choice's motion on January 5, 2006, and Choice responded on January 6, 2006.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.  Choice's Motion for Summary Judgment

The Plaintiffs have alleged that Choice is liable on multiple theories of negligence. First, the Plaintiffs allege that Choice is directly liable to the Plaintiffs because it failed to require RGH and Gedda to retrofit the hotel with sprinklers prior to its opening as a Comfort Inn.  Second, the Plaintiffs allege that Choice is vicariously liable on theories of actual and apparent agency for the actions of RGH and Gedda.  As discussed in the December Order, the Plaintiffs contend that RGH and Gedda were negligent in providing inadequate security by (1) leaving the back door to the hotel unlocked, (2) failing to install surveillance cameras at the hotel, and (3) leaving boxes and materials in a place where the arsonist could gather them and use them to fuel the fire.  Moreover, the Plaintiffs argue that RGH and Gedda were negligent in (4) training employees at the Comfort Inn to disengage an active fire alarm until confirmation of the presence of a fire and to delay in calling the fire department until after confirming the fire and (5) failing to install a sprinkler system at the hotel.

### 1.  Negligence

To prevail on a negligence claim in South Carolina,  "[A] plaintiff must show the (1) defendant owed a duty of care to the plaintiff[;] (2) defendant breached the duty by a negligent act or omission[;] (3) defendant's breach was the actual and proximate cause of the plaintiff's injury[;] and (4) the plaintiff suffered injury or damages."  Jackson v. Swordfish Inv., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005).  "Whether the law recognizes a particular duty is an issue of law to be determined by the court."  Id.

## 2. Direct Liability

The Plaintiffs' primary allegation of negligence is that Choice breached a duty it owed to the Plaintiffs by failing to require RGH and Gedda to retrofit the hotel facility with a sprinkler system before opening the facility as a Comfort Inn.  As an initial matter, the Plaintiffs have offered no evidence to show that the hotel facility, both when opened as a Comfort Inn and when the fire occurred, failed to comply with all of the applicable fire codes. Moreover, neither the Plaintiffs nor the court has unearthed a single case, in any jurisdiction, holding that a hotel franchisor has a duty to require a hotel which complies with the relevant fire codes to retrofit the building with sprinklers.

Whether Choice had a duty to require sprinklers is undeniably a question of law for the court.  See Jackson, 620 S.E.2d at 56.  For the reasons given below, the court finds that there was no such duty.

Before the hotel was opened as a Comfort Inn in 2003, it was operated as a Days Inn. (Choice's Mem. Supp. Summ. J. Ex. B. (Gedda Dep. at 9-10, 14-15).)  It is undisputed that Choice required RGH and Gedda to make numerous renovations to the facility before opening it as a Comfort Inn but did not require retrofitting the facility with sprinklers.  The fact that Choice required such upgrades and could have required RGH and Gedda to retrofit the hotel with sprinklers does not create a duty for Choice to require sprinklers as a protection against fire.

As a franchisor and trademark holder, Choice had the obligation to protect its Comfort Inn trademark and the goodwill associated with it.  See Hunter v. Ramada Worldwide, Inc., No. 04-062ERW, 2005 WL 1490053, at *6 (E.D. Mo. June 23, 2005); Raines v. Shoney's

7

Inc., 909 F. Supp. 1070, 1078 (E.D. Tenn. 1995); see also Kerl v. Dennis Rasmussen, Inc., 682 N.W.2d 328, 338 (Wis. 2004) ("The purpose of the Lanham Act [, 15 U.S.C. § 1051 et seq.,] . . . is to ensure the integrity of registered trademarks, not to create a federal law of agency . . . or to automatically saddle the licensor with the responsibilities under state law of a principal for his agent." (internal quotation marks omitted)).   Accordingly, Choice had an obligation, when converting a Days Inn to a Comfort Inn, to require renovations or risk jeopardizing the Comfort Inn mark.  However, the nature of Choice's relationship with RGH and Gedda precludes a finding that Choice owed a duty directly to the Plaintiffs to require RGH and Gedda to retrofit the hotel with sprinklers.

Choice entered into a franchise agreement ("Agreement") with RGH and Gedda that established the parameters of its franchise relationship.  Under the Agreement, RGH and Gedda were listed as franchisees and independent contractors of Choice.  (Pls.' Mem. Opp'n Summ. J. Ex. A (Agreement at 10).)  The mere designation of RGH and Gedda as independent contractors of Choice is not conclusive as to the nature of their relationship. Nelson v. Yellow Cab Co., 564 S.E.2d 110, 111 n.1 (S.C. 2002).  However, upon viewing the evidence of Choice's role at the Comfort Inn, including the Agreement, the Comfort Inn Rules and Regulations Instructions ("Rules and Regulations"), and Choice's interaction with the Comfort Inn pursuant to the Agreement, the court finds that "[t]he relationship was not unlike typical franchisor-franchisee relationships."  Choice Hotels Int'l Inc. v. Palm-Aire Oceanside, Inc., No. 95-2592, 1996 WL 494063, at *2 (4th Cir. Aug. 30, 1996)

(unpublished) (analyzing a Choice franchise contract).[2]

Under both the Agreement and the Rules and Regulations, RGH and Gedda (1) owned the building, land, and hotel equipment; (2) held the operating licenses and permits; (3) hired, fired, supervised, and disciplined the franchisee's employees; (4) determined employee wages and room rates; (5) provided daily training for employees, and (6) provided insurance for the hotel. (Choice's Mem. Supp. Summ. J. Ex. A (Agreement at 8-10) & Ex. B (Ronald Gedda Dep. at 8-18).) Choice's Rules and Regulations required RGH and Gedda to have life safety systems, which included smoke and fire detection, fire extinguishing equipment, emergency exits, and emergency lighting, all as required by local, state, and federal law, and an emergency evacuation plan, to be approved by "local fire and safety officials." (Pls.' Mem. Opp'n Summ. J. Ex. R. (Rules and Regulations ¶¶ 400-406).) Moreover, the Rules and Regulations recommended an emergency power generator and sprinkler system. (Id. (Rules and Regulations ¶¶ 400, 403).) However, neither the Agreement nor the Rules and Regulations establish that Choice operated the Comfort Inn or controlled its life safety systems. Rather, RGH and Gedda operated the Comfort Inn under the Rules and Regulations set forth by Choice.

The purpose of Choice's Rules and Regulations was to ensure a similar experience at all Comfort Inn franchise locations and "maintain[] . . . uniform service within, and public good will toward, the [Choice] system." See Hayman v. Ramada Inn, Inc., 357 S.E.2d 394,

---

[2]The court recognizes that, absent unusual circumstances, the citation of unpublished opinions of the Fourth Circuit is disfavored. See U.S. Ct. App. 4th Cir. Rule 36(c). However, because there is no published opinion in the Fourth Circuit on point, the court believes its reference to the above-mentioned case is relevant and appropriate.

397 (N.C. Ct. App. 1987). The "clear trend in the case law in other jurisdictions is that the

quality and operational standards and inspection rights contained in a franchise agreement do

not establish a franchisor's control or right of control over the franchisee sufficient to ground

a claim for vicarious liability as a general matter . . . ." Kerl, 682 N.W.2d at 338.

Additionally, the fact that Choice made recommendations in its Rules and Regulations, such as

suggesting that RGH and Gedda install sprinklers, does not establish that Choice controlled

RGH and Gedda. See Wendy Hong Wu v. Dunkin' Donuts, Inc., 105 F. Supp. 2d 83, 93-94

(E.D.N.Y. 2000); Helmchen v. White Hen Pantry, Inc., 685 N.E.2d 180, 182 (Ind. Ct. App.

1997).[3] Moreover, by requiring renovations to the hotel, Choice did not voluntarily undertake

a duty to the Plaintiffs to provide fire protection, but merely guarded its trademark by

assuring uniform appearance and operations of hotels operating under the Comfort Inn mark.

See Helmchen, 685 N.E.2d at 182 ("These mandatory procedures are intended to assure

uniformity in operation and appearance, and to protect the . . . trademark and the good will

associated with it." (emphasis added)).

Finally, contrary to the Plaintiffs' argument, Dorrell v. South Carolina Department of

Transportation, 605 S.E.2d 12 (S.C. 2004), does not support a finding that Choice had a duty

to require sprinklers. In Dorrell, the contractor who paved a shoulder on a road in a way

which ultimately resulted in serious harm to a driver argued that he owed no legal duty to the

---

[3]A franchisor may operate a franchise establishment or control the instrumentality at the franchise establishment that causes injury and thus owe a duty to patrons of the franchise. A franchisor may exert such control over the franchisee's operations that the very employees and management of the franchise think that they are working for the franchisor, as they did in Fernander v. Thigpen, 293 S.E.2d 424, 426 (S.C. 1982). However, the court concludes that Choice did not exert sufficient control over RGH and Gedda to create a duty to the Plaintiffs.

injured driver because the shoulder was paved pursuant to the contract and the South Carolina Department of Transportation had accepted the work.  Id. at 13-14.  The South Carolina Supreme Court noted that a "tortfeasor's liability exists independently of the contract and rests upon the tortfeasor's duty to exercise due care," and the "common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs."  Id. at 15.  Dorrell is easily distinguishable, as the contractor in Dorrell created the risk by building the shoulder in such a way that a driver could be injured.  In the instant case, Choice did not create a risk or build anything, but rather required renovations to protect its trademark.  In essence, the Plaintiffs argue that Choice negligently failed to make the hotel safer than it was before, when it was being operated as a Days Inn.  The court finds that Dorrell compels no such conclusion, and Choice had no duty to require RGH and Gedda to install sprinklers.  As there was no duty, Choice is entitled to summary judgment on the Plaintiffs' direct liability claim against it.

## 2. Vicarious Liability

### a. Actual Agency

Choice contends that it is entitled to summary judgment on the the Plaintiffs' argument that Choice is liable for the negligent acts of RGH and Gedda because they were Choice's actual agents.  Under South Carolina law, "[t]he test to determine agency is whether or not the purported principal has the *right to control* the conduct of [its] alleged agent."  Fernander, 293 S.E.2d at 426.  "Generally, questions of agency ordinarily should not be resolved by summary judgment where there are *any* facts giving rise to an inference of an agency relationship."  Id. at 425 (internal quotation marks omitted).  Plaintiffs have the burden of proving that RGH and Gedda were either Choice's actual or apparent agents.  Frasier v.

11

Palmetto Homes of Florence, Inc., 473 S.E.2d 865, 867 (S.C. Ct. App. 1996) ("A party

asserting agency as a basis of liability must prove the existence of the agency, and the agency

must be clearly established by the facts.")

In the instant case, there is no genuine issue of material fact with respect to how

Choice allegedly controlled RGH and Gedda.  Rather, the issue before the court is whether,

given the relationship between Choice and RGH and Gedda, Choice exerted sufficient control

over RGH and Gedda that RGH and Gedda could be actual agents of Choice.  As the facts

concerning how Choice allegedly controlled RGH and Gedda are not in dispute, the court

finds that whether there was sufficient control for an actual agency relationship to result and

the alleged principal to owe a duty to the Plaintiffs is a question of law for the court.  Cf.,

Hoffnagle v. McDonald's Corp., 522 N.W.2d 808, 811, 812, 813 (Iowa 1994) (Noting that

"[w]hether such a duty [in a negligence action] arises out of the parties' relationship is always

a matter of law for the court" and analyzing the extent of the control of the franchisor over the

property and daily operations of the franchisee to determine the existence of a duty).

The Plaintiffs argue that Fernander requires that upon introduction of any facts that

would support an agency relationship, the court must deny Choice's motion for summary

judgment.  The Plaintiffs' reliance on Fernander is misplaced.  The South Carolina Supreme

Court in Fernander examined not only the applicable franchise agreement but also the conduct

of the purported agent.  The court noted that the franchisee's manager and at least one

employee acted with the apparent authority of the franchisor, even believing that they were

employed by the franchisor.  293 S.E.2d at 426.  However, the Supreme Court also noted that

the franchise displayed "the distinctive Burger Chef sign" and used "Burger Chef napkins,

uniforms and advertising." Id.  In conclusion, the Supreme Court observed, "Obviously, all of this evidence infers [sic] A & H Foods, Inc. was an agent of the Burger Chef Corporation despite the provision in the franchise agreement requiring A & H Foods to remain an independent contractor." Id. (emphasis added).

Under the Plaintiffs' reading of Fernander, the court should deny summary judgment on the Plaintiffs' vicarious liability theory if there is any evidence of agency, such as the displaying of the Comfort Inn sign.  This reading cannot be supported.  If that was the law, franchisors would be foreclosed from summary judgment on a vicarious liability theory by publicly representing their affiliation with the franchisees, regardless of the amount of control the franchisors have over the franchisees.

Moreover, the Plaintiff's interpretation of Fernander is inconsistent with the South Carolina Court of Appeals' holding in Watkins v. Mobil Oil Corp., 352 S.E.2d 284, 285 (S.C. Ct. App. 1986), in which a plaintiff sued Mobil Oil Corporation ("Mobil") on vicarious liability theories of actual and apparent agency for a tort which occurred on the premises of a gas station.  The gas station sold Mobil products and had a Mobil sign atop the station and on the gas pumps.  Further, the station manager had a Mobil emblem on his uniform.  Id. at 286. The court considered whether the trial court properly denied Mobil's motions for directed verdict and judgment notwithstanding the verdict on the plaintiff's vicarious liability theories. Id., 285.  The court first considered whether the evidence was sufficient to support a finding of  actual agency.  Id. at 286.  Rather than concluding that the display of Mobil signs was sufficient evidence to permit the claim to go to the jury, the court considered whether Mobil controlled the station such that it could be liable under an actual agency theory.  Id. at 286.

13

Similarly, this court must consider whether, given Choice's relationship with RGH and Gedda and Choice's interaction with the Comfort Inn pursuant to the Agreement, Choice exerted sufficient control over the daily operations or the hotel security and the life safety systems such that RGH and Gedda could be Choice's agents.

Upon careful review of the evidence, the court finds that Choice did not control the hotel's daily operations or hotel security and life safety systems. Through the Agreement and the Rules and Regulations, Choice merely maintained "uniform service within, and public good will toward, the [Choice] system." <u>Hayman</u>, 357 S.E.2d at 397. As such, Choice cannot be liable under these facts on a theory of actual agency. <u>See</u> <u>Anderson v. Turton Dev. Inc.</u>, 483 S.E.2d 597, 601 (Ga. Ct. App. 1997) (Analyzing Choice's relationship with its franchisee and concluding, "These terms of the franchise agreement, rules and regulations, would not support a finding that Choice had the right to exercise such control as to make it vicariously liable for the acts of its franchisee . . . in maintaining the premises in a safe condition."); <u>see also</u> <u>Schlotzsky's, Inc. v. Hyde</u>, 538 S.E.2d 561, 563 (Ga. Ct. App. 2000) ("A franchisor's reserving the right to inspect, monitor, or evaluate the franchisee's compliance with its standards and to terminate the franchise for noncompliance is *not* the equivalent of retaining day-to-day supervisory control of the franchisee's business operations as a matter of law.") Therefore, Choice is entitled to summary judgment on the Plaintiffs' claim that RGH and Gedda acted as Choice's actual agents.

### b. Apparent Agency

The Plaintiffs have also alleged that Choice is liable for RGH and Gedda's negligent acts on the theory of apparent agency. Even if there is no actual agency, a party may be liable

14

as the principal for another if that principal holds the other out in a way that reasonably induces reliance on the appearance of an agency relationship. See R & G Const., Inc. v. Lowcountry Reg'l Transp. Auth., 540 S.E.2d 113, 118 (S.C. Ct. App. 2000). The elements which must be proven to establish apparent agency are: "(1) purported principal consciously or impliedly represented another to be his agent; (2) third party reasonably relied on the representation; and (3) third party detrimentally changed his or her position in reliance on the representation." Id.

The Plaintiffs allege that the numerous Comfort Inn signs, the Comfort Inn name and mark on items in the hotel, advertisements, and other uses of the Comfort Inn mark and name constitute a "representation" by Choice that RGH and Gedda are its apparent agents.

In Watkins, in addition to considering whether the gas station was Mobil's actual agent, the Court of Appeals considered whether the station's sale of Mobil products, a Mobil emblem on the station manager's uniform, Mobil's signs, and the recital on an arrest warrant identifying the station as "North Main Mobil" constituted sufficient evidence of apparent agency. 352 S.E.2d at 287. In dicta, the court concluded that use of Mobil's trademark "[a]t most] . . . constituted a representation that Mobil operated the station" but found that Mobil was entitled to judgment as a matter of law on another element. Id. (emphasis added). No South Carolina court has held that a franchisee's use of its franchisor's trademark or trade name and national advertisements concerning the trademark constitute a representation.[4]

---

[4]The issue of whether advertising and a franchisee's use of a franchisor's trademarks and trade name are sufficient to constitute a representation was not addressed in the Fernander opinion. 293 S.E. at 425-27.

15

Finally, not all alleged representations of an agency relationship, even if proven, constitute "representations" in satisfaction of the first element of apparent agency.  See, e.g., Cowburn v. Leventis, 619 S.E.2d 437, 448 (S.C. Ct. App. 2005) (finding that certain alleged acts failed to amount to a representation of an agency relationship).

Choice required RGH and Gedda to conspicuously display a sign proclaiming that the hotel is owned and operated by the franchisee, and Gedda testified in his deposition that the Comfort Inn had complied with this requirement by placing a sign in view of the registration desk, indicating that the hotel was owned and operated by RGH.  (Choice's Mem. Supp. Summ. J. Ex. B (Gedda Dep. at 18).)  Moreover, Vijay Patel ("Patel"), the general manager of RGH, testified that the hotel had displayed, prior to and including the night of the fire, a wooden-framed South Carolina Retail License in plain view of the front desk which stated that the owner of the business location was RGH, but stating that the property was a "DAYS INN," the trademark under which the hotel had been operated before opening as a Comfort Inn in 2003.  (Id. Ex. B (Gedda Dep. at 12, 14) & Ex. C (Patel Dep. at 15-16).)  Finally, a third notice in the elevators indicated that the owner of the property was RGH, and that the hotel was a Days Inn.  (Id. Ex. C. (Patel Dep. at 16-17).)  The court finds that Choice's national advertisements and RGH and Gedda's usage of the Comfort Inn mark and name, when coupled with notice at the registration desk and the elevator that Choice did not run and

16

operate the hotel,[5] did not constitute a "representation" for purposes of establishing apparent agency.  See Anderson, 483 S.E.2d at 601 (finding that Choice could not be liable under an apparent agency theory because there was no evidence "that the franchisee, with the knowledge of the franchisor, held itself out as being operated by the franchisor."); BP Exploration & Oil, Inc. v. Jones, 558 S.E.2d 398, 403 (Ga. Ct. App. 2001) ("[A] national oil company's advertising campaign to solicit the public's trust and confidence in its affiliates does not necessarily render the oil company liable for injuries at an independently operated gasoline station." (internal quotation marks omitted)); McGuire v. Radisson Hotels Int'l, Inc., 435 S.E.2d 51, 53-54 (Ga. Ct. App. 1993) (finding that the franchisee's display of the Radisson name at the hotel, coupled with Radisson advertisements, did not constitute a representation).

Finally, the Plaintiffs' reliance on Beasley v. Kerr-McGee Chemical Corp., 257 S.E.2d 726, 727 (S.C. 1979), to support their argument for apparent agency is misplaced. Beasley purchased cotton seed from a "Kerr-McGee Field Office" which was located in Houser's Supermarket ("Houser's"), a rural general store.  Beasley had established a line of credit with Kerr-McGee Chemical Corporation, Inc. ("Kerr-McGee"), and Houser's charged the seed directly to Beasley's account with Kerr-McGee.  Id.  Kerr-McGee, not Houser's, billed Beasley directly.  Id.  When the seed failed to germinate, Beasley brought a breach of

---

[5]The extent and location of the notice to guests distinguish this case from Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 166 (4th Cir. 1988).  Moreover, in Crinkley, Holiday Inns, Inc. owned and operated some of the hotels under the Holiday Inn trademark.  There is no allegation that Choice owns and operates any of the hotels operating under the Comfort Inn trademark.  Id. at 166-67.

17

implied warranty of merchantability claim directly against Kerr-McGee, arguing that Houser's had acted as Kerr-McGee's agent.  Id.  Unlike the instant case, there was no notice to the customers of the "Kerr-McGee Field Office" that, in fact, the "Field Office" was merely a portion of the general store and not exactly what it said, a "Kerr-McGee Field Office" operated by Kerr-McGee.  Moreover, Beasley was billed directly by Kerr-McGee, not Houser's.  Finally, the court in Kerr-McGee noted, "[W]e think it clear from the evidence that Kerr-McGee not only vested Houser['s] with authority beyond that of a mere warehouseman, but also cloaked Houser['s] with the apparent authority to negotiate the present sale from which an implied warranty would flow."  Id. at 728.

Based on the foregoing, the court finds that there is no genuine issue of material fact with respect to the Plaintiffs' claims that Choice's national advertisements and the use of the Comfort Inn trademark in the hotel constituted a "representation" for purposes of establishing apparent agency.

Further, even if there was a genuine issue of material fact with respect to the first element, Choice's alleged representation, the court finds that the Plaintiffs have failed to provide evidence sufficient to create a genuine issue of material fact with respect to the second element, reasonable reliance on the representation.  Considering the notices to the guests and the affidavits the Plaintiffs have provided, the court finds that the Plaintiffs have failed to provide sufficient evidence to establish a genuine issue of material fact on the issue of reasonable reliance on the alleged representation by Choice.  Hayman, 357 S.E.2d at 398 (finding that there was no misrepresentation as to the relationship between the hotel franchisor and franchisee where the franchisor required the franchisee to expressly indicate its licensee

18

relationship in all advertising, business stationery, and "a clearly visible sign to be displayed prominently at the front desk," and there was no evidence that the franchisee failed to comply with this requirement (internal quotation marks omitted)).  As such, Choice is entitled to summary judgment on the issue of apparent agency.

It is therefore

**ORDERED** that Choice's motion for summary judgment, document number 42 in civil action number 04-2327, document number 56 in civil action number 04-1260, and document number 42 in civil action number 04-2328, is granted.

**IT IS SO ORDERED.**

s/ Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
January 12, 2006